REM ENTERPRISES, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ROBERT E. MORSE and PATRICIA A. MORSE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
REM Enterprises, Inc. v. Commissioner
Docket Nos. 11851-78, 11852-78.
United States Tax Court
T.C. Memo 1979-494; 1979 Tax Ct. Memo LEXIS 38; 39 T.C.M. (CCH) 672; T.C.M. (RIA) 79494; December 6, 1979, Filed Robert E. Remmell, for the petitioners. David R. Smith, for the respondent. TANNENWALD
MEMORANDUM OPINION *38 TANNENWALD, Judge: In these consolidated cases, respondent determined deficiencies in petitioners' income taxes as follows: Additions to tax
(section
(section Petitioners
Year
Income Tax
6651(a)(1)) [1]
6653 (a))
Rem Enter-
1971 $ 304.05 $ 76.01 $ 15.20
Prises,
Inc.
(Dkt. No.
11851-78)
Robert E.
1970
8,721.95
1,956.24
436.10
Morse and
Patricia
1971
7,775.03
1,727.96
388.75
A. Morse
(Dkt. No.
11852-78)
*39 Due to concessions by the parties, two issues remain for decision: (1) Are the income and deductions arising from certain activities properly reportable by the corporations involved or by the individual petitioners and (2) are the petitioner liable for additions to tax for failure to file timely returns?
All of the facts have been stipulated and are found accordingly. Petitioner REM Enterprises, Inc. (hereinafter sometimes referred to as REM) was incorporated as a New York corporation in 1965. It had its principal place of business at 1404 Whitesboro Street, Utica, N.Y., a the time it filed its petition herein. It did not file a Federal income tax return for 1971. Petitioners Robert E. Morse (hereinafter sometimes referred to as Morse) and Patricia A. Morse are husband and wife with legal residence in Whitesboro, N.Y., at the time they filed their petition herein. They filed joint Federal income tax returns for the taxable years 1970 and 1971 with the district director of internal revenue at Buffalo, N.Y. Their 1970 return was filed on April 3, 1974, and *40 their 1971 return on April 23, 1974. At all times material herein, Morse was chief operating officer of REM. During the years 1970 and 1971, REM held legal title to the following rental properties: 1219 Whitesboro St., 1402 Whitesboro St., 1404 Whitesboro St., 1408 Whitesboro St., 1310 Noyes, and 1312 Noyes, all of which properties are located in the city of Utica, N.Y. Morse had deeded three of these properties to REM on November 17, 1965, April 14, 1967, and March 26, 1978, respectively. REM also held title to rental property located on Cider Street in Oriskany, N.Y. Generally, rental receipts from these properties were deposited in checking account No. XXX-XX857-0 at Marine Midland Trust Company, in the name of R.E.M. Enterprises, Inc. During 1970, deposits totaling $35,257.65 were made to the above-mentioned REM checking account. During that year, expenses on the rental properties were generally paid by checks drawn on this account. The account was closed on or about January 21, 1971. On Schedule C of their 1970 return, the individual petitioners herein reported a net loss of $2,869.72 from the aforementioned rental properties, representing the excess of operation *41 expenses over the rental income therefrom. On Schedule C of their 1971 return, they reported income of $26,550.00 and expenses of $25,167.96 attributable to the aforementioned rental properties, or a net profit of $1,382.04. Morse Aero, Inc. (Aero) was, at all times material herein, a New York corporation formed in 1963, with its principal place of business at 1404 Whitesboro Street, Utica, N.Y. As of the date of trial herein, Aero had never filed a Federal income tax return. [2]
At all times material herein, Morse was chief operating officer of Aero. On June 12, 1968, Aero acquired title to a 1968 Grumman Widgeon twin-engine Scan Type 30 land aircraft from Franklin-Morse Aircraft Corporation in Miami, Fla. Aero registered this aircraft with the Federal Aviation Agency (FAA) shortly thereafter. On July 1, 1968, the FAA issued a "certificate of Aircraft Registration" (FAA Fm. 8050-3) to Morse Aero, Inc., bearing registration number N7916C. At all time material herein, this aircraft remained registered to Aero. Prior to May 5, 1969, Aero applied to the FAA for an "air worthiness certificate" for the aircraft. On May 5, 1969, the *42 FAA certified that the plane was in airworthy condition for flight tests in the experimental category for the purpose of research and development. The aircraft was insured by Insurance Company of North America (INA) in the name of Morse Aero, Inc., as insured, through a Wichita, Kans., agency known as Don Flower Associates, Inc. On August 5, 1971, the aircraft crash-landed in Biscayne Bay near Miami, Fla. After this accident, Aero filed a claim for reimbursement of the loss with INA. INA denied liability. Aero then brought a lawsuit in its name against INA and Don Flower Associates, Inc., in the Supreme Court of New York, Oneida County. On August 25, 1976, after a non-jury trial, a decision was rendered for defendants and the complaint dismissed. In order to finance the purchase of hulls and parts for experimental planes, a $50,000 bank loan was obtained in the name of Aero. The lender would not loan this sum of money to Morse individually because local usury laws limited the rate of interest on such an individual loan to a level unacceptable to the bank. Therefore, the loan was made to Aero, with Morse signing as guarantor of the corporation's indebtedness. During *43 the year 1970, the operations conducted under the name of Morse Aero, Inc., produced no gross income. During that year, such operations generated business expenses in the amount of $11,580.43, which the individual petitioners herein claimed as a loss on Schedule C of their 1970 return. The cost of goods sold for operations conducted under the name of Aero for 1970 was $114,595.88. This amount was deducted by the individual petitioners herein on their 1970 return as the loss on the experimental aircraft. During the year 1971, the operations conducted under the name of Aero produced no gross income. During that year, such operations generated business expenses in the amount of $6,709.86, which the individual petitioners herein claimed as a loss on Schedule C of their 1971 return. They also claimed a deduction of $57,024.17 as an "inventory loss" on said Schedule C.This amount represented the basis of spare aircraft parts and hulls which were abandoned and written off after the crash of the experimental aircraft. During the years 1970 and 1971, checking account No. XXX-XX352-3 was maintained in the name of Aero at the Oneida National Bank and Trust Company, Utica, N.Y. A substantial *44 number of deposits and withdrawals were made from that account. Oneida County Morse T.V. and Appliances, Inc. (hereinafter sometimes referred to as Appliances) was, at all times material herein, a New York corporation formed in 1965 with its principal place of business at 1404 Whitesboro Street, Utica, N.Y. During the year 1970, checking account No. XXX-XX324-0 was maintained in the name of Oneida County Morse T.V. and Appliances, Inc., at the Oneida National Bank and Trust Co. of Central New York, Utica, N.Y. Also during the year 1970, checking account No. XXX-XX517-2 was maintained in the name of Oneida County Morse T.V. and Appliances, Inc. -- Tax Account, at the Oneida National Bank and Trust Co. of Central New York. As of the date of trial herein, Appliances had never filed a corporation income tax return. [3]
The income and deductions, other than those set forth in the preceding paragraphs, which were reflected on Schedule C of the income tax returns of the individual petitioners herein for the years 1970 and 1971, arose from the operations conducted under the name of Appliances. REM, Aero, and Appliances *45 were formed by Morse for a number of reasons, the most significant of which were (not necessarily in this order): (1) the segregation of the various business enterprises in which he was engaged; (2) the limitation on personal liability which comes with doing business as a corporation; and (3) the facilitation of obtaining financing by use of the corporate form. The income tax returns of the individual petitioners herein for the years 1963 through 1967 were the subject of an audit by the New York State Department of Taxation and Finance. The State's examining agent proposed audit changes after doing a computation of the net worth of said petitioners over the applicable period.
Based on the State of New York's net worth analysis, the respondent issued a statutory notice of deficiency to the individual petitioners herein on September 24, 1969, in which he determined deficiencies in income taxes and/or additions to tax for the years 1963 through 1967. The 1968 tax return of the individual petitioners herein was audited by one of respondent's agents and closed "No change." On April 14, 1972, the individual petitioners herein filed a claim for refund of tax for the year 1968 in *46 the amount of $884, based on the assertion that they had erroneously failed to report additional income of $12,386 and expenses of $101,241 from operations conducted under the name of Franklin-Morse Aircraft Corporation. On August 18, 1972, respondent issued an examination report wherein his revenue agent disallowed said claim for refund. On September 15, 1972, Milton A. Halpern, C.P.A. (hereinafter Halpern) filed a protest and request for district conference in response to the revenue agent's examination report. The findings of respondent's revenue agent were sustained by the district conferee. This report was not issued to petitioners Robert and Patricia Morse or to Halpern. On behalf of the individual petitioners herein, Halpern pursued an appeal of the district conferee's findings to respondent's Appellate Division. However, he subsequently abandoned this appeal and, on September 11, 1973, signed IRS Form 2297, Waiver of Statutory Notification of Claim Disallowance, threby acquiescing in respondenths disallowance of the above-mentioned refund claim. Respondent also audited the 1969 income tax return of the individual petitioners herein. On September 10, 1971 respondent's *47 revenue agent issued his examination report with respect to the year 1969. In this report, respondent's agent included in his adjustments income and expenses for the several rental properties owned at that time in the name of REM, which had not been reported on the individual petitioners' return for 1969. On their original tax returns for the years 1967 through 1969, the individual petitioners herein reported no income or expenses of either Aero or REM, except that on some or all of these returns they claimed depreciation deductions on a 1963 Cessna aircraft owned in the name of Aero. As far as the separate existence of REM and Aero is concerned, we think that respondent should prevail. REM held title to the rental properties; the rental receipts were generally deposited in a checking account in REM's name, and (at least during 1970) expenses of those properties were generally paid from that account.Much the same set of circumstances existed with respect to the ownership of aircraft in the name of Aero and activities in connection therewith, including the conduct of litigation, as well as the arrangements to finance the purchase of hulls and parts for experimental planes. We *48 are satisfied that, on the basis of the facts of record, the situation with respect to REM and Aero falls within the principle enunciated in Strong v. Commissioner,66 T.C. 12 (1976), affd. without opinion 553 F.2d 94 (2d Cir. 1977), namely, that "[if] the corporation was intended to, or did in fact, act in its own name with respect to property, its ownership thereof will not be disregarded" and that "the degree of corporate purpose and activity requiring recognition of the corporation as a separate entity is extremely low." See 66 T.C. at 24. Cf. Weigman v. Commissioner,47 T.C. 596 (1967), affd. per curiam 400 F.2d 584 (9th Cir. 1968). Petitioners seem to recognize the impact of Strong by not facing directly the issue of the separate existence of REM and Aero but rather arguing that: (1) these two corporations and Appliances should be treated the same; (2) respondent has not seen fit to disturb the inclusion of the income and expenses of Appliances on the individual petitioners' returns, i.e., permitting those petitioners to ignore the separate corporate existence of Appliances; and (3) ergo, the petitioners *49 herein should be permitted to ignore the separate corporate existence of REM and Aero. Petitioners also argue that consistency requires respondent to disregard the separate corporate existence of REM and Aero because he had done so in audits of the individual petitioners' returns for previous years. In advancing these arguements, petitioners renounce any claim of collateral estoppel as such. Petitioners' position is totally without merit. For aught that appears in this record, there may have been circumstances surrounding the activities relating to Appliances which would have distinguished it from REM and Aero insofar as the nonrecognition of its separate existence is concerned. [4] In any event, if such were not the case, the burden of proof was on the petitioners to adduce evidence to such effect, which they have not done. Rule 142(a), Tax Court Rules of Practice and Procedure. Moreover, even if such evidence had been forthcoming, respondent could not be faulted for not having treated all three corporations the same. It would have been up to the individual petitioners to have pleaded the nonrecognition of Appliances and sought to offset the deficiencies asserted against *50 them (or possibly even asserted an overpayment), a course of action which they have not pursued. We reject the argument of consistency which petitioners advance to avoid the recognition of REM and Aero. See Home Furniture Co. v. Commissioner, 168 F.2d 312, 314 (4th Cir. 1948), affg. a Memorandum Opinion of this Court, and Meridian Mutual Insurance Co. v. Commissioner, 44 T.C. 375, 378 (1965), affd. 369 F.2d 508 (7th Cir. 1966). The case of W. S. Badcock Corp. v. Commissioner, 491 F.2d 1226 (5th Cir. 1974), revg. 59 T.C. 272 (1972), the only case relied upon by petitioners, involved the interpretation of contracts and the consequent timing of the income and deductions of a particular taxpayer as between different taxable years and is totally irrelevant to the instant case. [5]
*51 As part of his deficiency notice against the individual petitioners herein, respondent asserted that the net profit of $1,382.04 derived from the operations of REM in 1971 was not only properly reportable and taxable by REM but was also taxable to Morse as a dividend for that year. As far as the record herein is concerned, it seems clear that the foregoing amount represented current earnings and profits of REM for the taxable year 1971 and that such amount was distributed to Morse. The burden was on the individual petitioners to show that this was not the case (see Rule 142(a), supra), which they have not done. Consequently, respondent properly treated such amount as a dividend from REM to Morse. Section 316. [6]
Finally, we sustain respondent's determinations in respect of additions to tax against the petitioners under section 6651(a). The burden was on petitioners to show that their failure to file timely returns was "due to reasonable cause and not due to willful neglect" (see Rule 142(a), supra) and they have failed to adduce evidence to carry their burden (e.g., Fischer v. Commissioner, 50 T.C. 164, 177 (1968)). *52 Decisions will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years at issue.↩
2. Aero is not a party to the proceedings herein.↩
3. Appliances is not a party to the proceedings herein.↩
4. Indeed, respondent asserts (although the record is devoid of evidence in this regard) that he had thought Appliances was an individual proprietorship. ↩
5. Petitionrs' reliance upon Badcock↩ may have stemmed from a perception that section 482 was involved herein, although that case did not involve that section. The deficiency notices specified both sections 61 and 482, and, upon submission of the instant case, it was conceded that section 482 was not involved.
6. See and compare Klausner v. Commissioner, T.C. Memo. 1978-405↩.